Sparta Building and Loan Association, Appellant, v. The Estate of Beulah W. Renfro, Deceased, Appellee.

304

Opinion filed
November 9, 1936.

Isaac K. Levy and David B. Levy, both of Murphysboro, for appellant.

Chas. E. Feirich and Glenn O. Brown, both of Carbondale, for appellee.

Mr. Justice Edwards delivered the opinion of the court.

Appellant, plaintiff below, seeks to hold the estate of Beulah W. Renfro, deceased, for the amount of deficiency upon the foreclosure of a mortgage. It appears that R. E. Renfro became a member and stockholder in appellant, and borrowed of it the sum of $6,000. He and his wife, the said Beulah W. Renfro, signed

the member's obligation, which was secured by a mortgage upon certain real estate of R. E. Renfro. The wife was never a member or stockholder of appellant. The mortgage was foreclosed, decree being taken in June, 1930. Pending the proceedings, Beulah W. Renfro died, her death was suggested of record, and no further proceedings were had against her in such suit, which proceeded to a decree against R. E. Renfro.

The master executed the decree by selling the real estate secured by the mortgage; there was a deficiency of $4,573.26 to satisfy the decree, and the court, upon approval of the master's report, rendered a judgment or order of deficiency against R. E. Renfro. Appellant thereupon filed its claim for the amount represented by such deficiency, against the estate of said Beulah W. Renfro; the county court allowed the claim, the circuit court upon appeal disallowed it, and this further appeal has been perfected.

Appellee contends that the judgment of disallowance should be affirmed for three reasons: First, that no competent proof was made to sustain the claim; second, that appellant by taking a deficiency decree against R. E. Renfro alone, thereby released Beulah W. Renfro and her estate from further liability; third, that appellant was without legal authority, under the statute, to enter into the obligation in question, and that its action in that behalf was ultra vires.

Upon the first contention we are of opinion that the evidence was sufficient. The obligation or acknowledgment of indebtedness required payment at the rate of $30 per month, and $30 per month interest, until the whole amount should be liquidated. It is urged that this was not a promissory note. Ill. State Bar Stats. 1935, ch. 98, ¶ 205 (sec. 205, ch. 98, Smith-Hurd's R. S. 1935), provides that an unconditional written promise, engaging to pay on demand or at a fixed or determinable time in the future, shall constitute a promissory

note. We think the writing comes within the terms of such section.

It is also claimed that the obligation, on its face, shows that Beulah W. Renfro signed as principal, and not as surety as claimed by appellant. The proof shows that R. E. Renfro applied for the loan; that the entire proceeds were taken by him, and that Beulah W. Renfro did not receive any part of the money so loaned. In our opinion the proof established that Mrs. Renfro signed as surety. It was competent to prove that a comaker of a promissory note was in fact a surety. *Walker v. Chicago, M. & N. R. Co.,* 277 Ill. 451, 455. It is also insisted that there was no competent proof of the amount remaining due on said obligation. The testimony was that nothing had been paid thereon, except the amount realized at the foreclosure sale. This proved the amount remaining due, and we think the proof was sufficient.

The second contention of appellee is that having proceeded to decree the deficiency judgment against R. E. Renfro alone, that the estate of Mrs. Renfro is thereby released from liability. *Travelers' Ins. Co. v. Mayo,* 170 Ill. 498, is cited in support thereof. We do not think it applicable to the instant case. There, the parties were all before the court until the entry of decree and no reason existed why deficiency should not have been adjudged against all of the primary obligors. In the instant case Mrs. Renfro died pending the foreclosure suit, hence by Ill. State Bar Stats. 1935, ch. 1, ¶ 12 (sec. 12 of ch. 1, Smith-Hurd's R. S. 1935), which governed such situations prior to the enactment of the Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 182 (sec. 178, ch. 110, Smith-Hurd's R. S. 1935), the suit abated as to her, but could continue as to the other defendant. Her personal representatives could not be joined in the proceeding; however, the creditor might bring a separate action against the personal representatives to enforce the

liability, as ruled in *Gemmill v. Smith,* 274 Ill. 87, and as held by this court in *City of Centralia v. McKee,* 267 Ill. App. 585; and as likewise stated in *Stevens v. Catlin,* 152 Ill. 56, 58; *Eggleston v. Buck,* 31 Ill. 254. We think it clear that appellant, after the death of Mrs. Renfro, which occurred in 1930, previous to the adoption of such Civil Practice Act, could not take any further action in the foreclosure suit, against her estate, but was required to bring an independent proceeding, such as this, to enforce its claim, and that its rights therein are not affected by the taking of the deficiency decree against R. E. Renfro alone.

Appellee's principal objection to the allowance of the claim was that appellant was not authorized by the statute to enter into the obligation herein sought to be enforced; citing sec. 231, ch. 32, Smith-Hurd's R. S. (Ill. State Bar Stats. 1935, ch. 32, ¶ 393) which enacts that a building and loan association can make no loan except to its own members, nor in excess of the amount of shares held by such member so borrowing. It further requires that good unincumbered and ample real estate security shall be given by the borrower to secure the payment of the loan. Sec. 232 of the same Act further provides that such association may take as additional security life insurance on the life of the borrower or other person.

It is earnestly contended that to permit the taking of further security, by way of a person who could not secure a loan for himself, engaging as security for an authorized borrower, is to circumvent the statute, and to permit to be indirectly done that which is not authorized by its terms, and that since Mrs. Renfro could not become liable as a borrower, she could not bind herself as security to assure the payment of a loan which she could not have procured for herself. We have not been cited to, nor have we been able to find, any decisions in this State which pass upon the question.

In *People's Bldg. & Loan Ass'n v. Billing,* 104 Mich. 186, 62 N. W. 373, under a statute like ours, which in its eighth section provided, "no loan shall be made by said corporation except to its own members," and, as here, a loan was made to a husband who was a member, and whose wife signed the obligation with him, as surety, the court said: "When the loan is made to a member, the fact that a joint obligation of such person and another is taken, or that the loan is secured by a mortgage executed by a third person, does not open the defense of ultra vires."

The Supreme Court of Pennsylvania, in *Citizens' Saving & Loan Ass'n v. Heiser,* 150 Pa. 514, 24 Atl. 733, quoted with approval from the opinion in the earlier case of *Association v. Mixell,* 84 Pa. 313: "Where a married woman unites with her husband in executing a mortgage on her separate property to secure a loan to her husband, which he, as a stockholder, procured from a building and loan association, it is a valid mortgage on her separate property, and, under the Act of 1859, covers the premiums due by him as such stockholder and the fines incurred by reason of his default in the payment of dues."

Sundheim on Building and Loan Associations, 3rd Ed., page 120, par. 120, states the rule to be: "Even if improper security was given, the borrower having received the benefit of the loan, cannot defeat a recovery by setting up the defense that the transaction was ultra vires. . . . A nonmember may give security or become security for a member, and in such a case is liable to as full extent as his principal, including premiums and fines."

No authorities to the contrary have been cited, nor have we been able to find any; hence we are constrained to hold that appellant had power to enter into the contract in question, and that Mrs. Renfro's obligation is binding upon her estate.

Aside from this there is another and forceful consideration, and that is, the right of appellee to urge ultra vires as a defense under the circumstances divulged by this record.

As said in *Eckman v. Chicago, B. & Q. R. Co.,* 169 Ill. 312, 322 and 323: "It is a general rule that a corporation cannot avail itself of the defense of ultra vires where a contract, not immoral in itself nor forbidden by any statute, has been in good faith fully performed by the other party, and the corporation has had the full benefit of its performance (citing authorities). And this rule applies with equal force to the other party setting up that the contract was ultra vires the corporation."

In *Kadish v. Garden City Equitable Loan & Bldg. Ass'n,* 151 Ill. 531, where the situation was somewhat analogous to the instant case, the court held that while an ultra vires contract remains executory, courts will interfere to prevent its enforcement at the behest of an interested party, but when the contract has been performed and carried into effect, and the corporation has received the benefit of it, it is then in no position to plead that it exceeded its power, in order to be relieved of its liability; and, conversely, if the other party has had the benefit of a contract which the corporation on its part has fully performed, he will not be permitted to urge that the contract was beyond the legal powers of the corporation. It is further held in the same case that, in general, courts will not permit the plea of ultra vires to prevail, either in behalf of or against a corporation, when its effect is not to promote justice, but rather will result in a legal wrong. And to the same effect is *Harmony Way Bridge Co. v. Leathers,* 353 Ill. 378, 394.

The contract in question is not, in its nature, immoral, does not contravene any rule of public policy, and is not contrary to any statute. The parties en-

tered into its performance in good faith, voluntarily and advisedly. The obligors on the note had the full benefit of the loan, and the transaction did not injure or mislead either of the Renfros to their prejudice. To permit the defense of ultra vires to be interposed would in no sense advance justice; it would, on the other hand, accomplish, under legal form, a wrong, and where such is true, within the rule as stated in the decisions cited, the defense is not available.

We think that upon this record appellant is entitled to the allowance of its claim.

The judgment is reversed and the cause remanded, with directions to allow the claim of appellant.

*Reversed and remanded with directions.*